UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| EX REL: | ) |
| | ) |
| CURTIS STOWE, | ) Case No.: <u>New Case</u> |
| | ) |
| Plaintiffs, | ) |
| | ) **COMPLAINT FOR DECLARATORY** |
| v. | ) **RELIEF AND DAMAGES** |
| | ) |
| | ) |
| CHALET CAPRI | ) |
| CONDOMINIUM ASSN. INC., et al, | ) **JURY DEMAND** |
| | ) |
| Defendants. | ) |

## I. INTRODUCTION

1. Curtis Stowe purchased property located at 275 Capri Circle N, unit A103, Treasure Island, FL 33706.

2. Plaintiff, Stowe notified Defendant Chalet Capri Condominium Association Inc., and the President, Defendant David Kidd, of his intent to rent the property as a short-term rental during the months that Plaintiff Stowe was not occupying the unit.

3. Plaintiff Stowe hired Vacasa, an agency that managed the short-term rentals, the property's availability, and the rental process.

4. Shortly thereafter, Plaintiff Stowe received communication from Vacasa representative Jodi Wert, that his tenants were being harassed and discriminated against by Defendant Kidd. Specifically, when an African American renter was staying at the property and visited the pool, Defendant Kidd called the police department and advised the renter that they do not accept his kind there.

5. Plaintiff Stowe has been advised that Defendant Kidd has discriminated against his tenants and himself, and he has received written communication from Defendant Kidd indicating that he would continue to harass and discriminate against his renters.

6. In November 2021, Plaintiff filed a fair housing complaint with the Pinellas County Office of Human Rights. Following an investigation by the Pinellas County Office of Human Rights and in conjunction with the Pinellas County Attorney's office, a determination of reasonable cause to believe that the Defendants acted in retaliation against the Plaintiff, in violation of the Fair Housing Act Amendments of 1988 (FHHA), including, but not limited to, 42 U.S.C.§3617. The Plaintiff has filed this present federal complaint alleging that the Defendants violated the Fair Housing Act, 42 U.S.C. §3601, *et seq.*, and related state laws through retaliation.

## II. JURISDICTION AND VENUE

7. The Court has jurisdiction over the Plaintiff's federal claims under 28 U.S.C. §1331 and 28 U.S.C. §1343. Additionally, the Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 because those claims are related to Plaintiff's federal claims and arise out of a common nucleus of related facts.

8. This Court has the authority to grant declaratory relief under 28 U.S.C. §§2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9. Venue is proper in the Middle District of Florida under 28 U.S.C. §1391 because the events giving rise to these claims occurred in Pinellas County, Florida, and the Defendants conducts business in the area.

## III. PARTIES

10. Plaintiff Curtis Stowe is a Caucasian male who resides in Pinellas County, Florida. (hereinafter referred to as "Plaintiff").

11. Defendant Chalet Capri Condominium Association Inc. is a condominium corporation incorporated in Florida and located in Pinellas County, Florida. (hereinafter referred to as the "Association").

12. Defendant David Kidd is an adult male individual who resides in Pinellas County, Florida, and is the Homeowners Association's President. (hereinafter referred to as "Defendant Kidd").

## IV. FACTUAL ALLEGATIONS

13. Curtis Stowe is a Caucasian male who owns a property located at 275 Capri Circle N. unit A103, Treasure Island, FL 33706. (hereinafter referred to as the "property").

14. Curtis Stowe closed on the property on November 24, 2020. Thereafter, he transferred the property to CWS Enteprises, LLC.

15. Plaintiff notified the Defendant Association and Defendant Kidd of his intent to rent out his unit at times, he was not occupying the unit when he initially filed his application on November 02, 2020. The application was approved on November 10, 2020. A copy of the Plaintiff's application is attached hereto as **"Exhibit 1."**

16. When the Plaintiff brought up his intent to rent the unit to Defendant Kidd, he expressed that this was unacceptable, even with the previous notice given in the Condominium application.

17. The Plaintiff officially moved into the property on December 5, 2020. Within the first few hours, Plaintiff was approached by the Treasure Island Police Department and was advised that Defendant Kidd called them because the Plaintiff "illegally" parking their car in front of their garage.

18. Additionally, while the Plaintiff was moving in, Defendant Kidd made a false police report that the Plaintiff had an illegal renter on the property. However, the person Defendant Kidd perceived as an illegal renter was actually a relative of the Plaintiff who assisted him with moving into the property.

19. This incident happened several times after, where Defendant Kidd would make false allegations that the Plaintiff's relatives who would visit were either illegal renters or contractors. This happened to the point where Defendant Kidd sent a notice to the Plaintiff that there was a "contractor" vehicle that needed to be moved. However, the vehicle belonged to a neighbor and had not been moved in over a year.

20. On December 21, 2020, Defendant Kidd approached the Plaintiff to tell him that he did everything he could to prevent the Plaintiff from purchasing the home.

21. On January 26, 2021, a friend of the Plaintiff was visiting their home and was harassed by Defendant Kidd. Defendant Kidd yelled at the visitor asking what their business was there and asking if they were a contractor.

22. Additionally, Defendant Kidd expressed that there was a problem with the Plaintiff keeping his grill and propane tanks on his patio. Defendant Kidd stated that the propane tanks needed to be kept inside because leaving them outside was a fire hazard. After reaching out to the Treasure Island Fire Department, Plaintiff was informed that it was safer to leave the propane tanks outdoors rather than inside.

23. In early February 2021, Defendant Kidd verbally advised that the Plaintiff's outdoor motion light because it projected light onto the building next door. However, there had been no complaints made by the neighbors next door about the light.

24. On March 4, 2021, the Association held a special meeting to amend the condominium documents to extend the minimum lease term to one year. On March 5, 2021, a letter noting the meeting minutes outlined that the association "fell one vote short to change the condo docs to specify a minimum of one year lease per unit at a special member meeting on March 4, 2021. A copy of the meeting minutes is attached hereto as **"Exhibit 2."**

25. On March 17, 2021, Defendant Kidd authored a response letter to Plaintiff outlining that State law requires that anyone who rents for less than 6 months and one day must collect and pay a nightly bed tax and the liability will fall on the Association. At the conclusion of the letter, the Defendant Kidd threated the Plaintiff as follows "As I have previously pointed out to you, when people choose to live in condominiums, they voluntarily relinquish certain activities necessary to live in the proximity with others. I urge you to recognize this hard fact and to avoid what will otherwise become an unnecessary, expensive, and unpleasant experience for you." A copy of the Response Letter is attached hereto as **"Exhibit 3."**

26. On March 17, 2021, Plaintiff was told to remove the beach house sign above his door. When asking if the other people in the complex were asked to do the same, Defendant Kidd responded by asking if the Plaintiff wanted to file a complaint against their neighbors. A copy of the Correspondence between Plaintiff and Defendant Kidd is attached hereto as **"Exhibit 4."**

27. On March 18, 2021, Plaintiff contacted board member Dan Acosta about a concern with termites. On the day that the appointment was, Terminix showed up at the unit behind his but failed to go to his unit. When trying to get Terminix to come back out Plaintiff reached out to Defendant Kidd, who told Plaintiff to figure it out himself. When contacting Terminix, the

Plaintiff was informed that in order to have them come back out he would need to go through management.

28. A new time and date for Terminix to come out were set. They were to arrive between 1 p.m. and 3 p.m. However, this was not communicated to the Plaintiff until 1:24 p.m., and the Plaintiff was not home at the time.

29. Plaintiff reached out to Defendant Kidd and attempted to get help rescheduling the Terminix appointment. However, Defendant Kidd informed Plaintiff that he needed to call Terminix on his own. Upon contacting Terminex, they advised that the Association would need to reach out and schedule the appointment. A copy of the Correspondence between Plaintiff and Defendant Kidd is attached hereto as **"Exhibit 4."**

30. On March 22, 2021, Plaintiff received a letter dated March 11, 2021, from the Association, where the President of the HOA specifically stated that due to the failure to reach the number of votes to amend the bylaws, "We must find another way to deal with predatory out of state investors and others that choose to redefine our multi-unit residential status to commercial status. This is if we wish to Save Our Homes." The President included the proposal to increase the application for rental fee from $50 to $1000 for short-term rentals, along with owners and potential owners having to address and prove extensive compliance with the fire department, safety, health department, vetting responsibility about what would happen to short-term renters, and that the police will be called if there is an unknown person occupying the property without board approval. A copy of the Association Letter is attached hereto as **"Exhibit 5."**

31. On March 23, 2021, Plaintiff sent the President a Cease and Desist Letter regarding a pattern of harassment from Defendant Kidd, President of the Association and its affiliates against

Plaintiff and his guests since arriving at the home on December 5, 2020. A copy of the Cease and Desist Letter is attached as **"Exhibit 6."**

32. On April 1, 2021, Defendant Kidd sent a letter to all owners expressing that only the 4 members who voted no at the Board Meeting held on March 4, 2021, would be the people who benefitted from their "investment strategy." He also stated that primary residents will be "left holding the bag" and that they will be "faced with totally unimaginable, extremely dangerous, and outrageously expensive ordeal," including the cost of getting a 24/7 hotel-type security installed. A copy of the Letter is attached hereto as **"Exhibit 7."**

33. On April 4, 2021, a letter was distributed by Defendant Kidd, to all of the Owners of the properties under the Association, urging the owners to attend a board meeting on April 22, 2021, to address short-term rentals once again.

34. On April 11, 2021, Plaintiff received the aforementioned letter stating (1) Increase in rental application fee from $50 to $1,000 (2) Sprinkler suppression system not required for his unit, (3) Stairs needed sanding and repainting, and not replacing (4) Health Department does not need to inspect vacation rentals (5) Vetting responsibility for vacation rentals does not fall on the Association (6) Defendant Kidd's planned harassment of any tenants. A copy of the Letter is attached hereto as **"Exhibit 8."**

35. At the time there were no tenants currently renting the Plaintiff's unit, prior to receiving the letter.

36. On June 9, 2021, Plaintiff received a letter from Defendant Kidd stating that all owners of any unit must provide the Condo Association with proof of liability insurance for any rental that

has not been approved by the Condo Association. A copy of the Association Letter is attached hereto as **"Exhibit 9."**

37. On July 23, 2021, Defendant Kidd called the police on tenants who were renting the Plaintiff's home at the time, stating that they were trespassing and that they should not be able to use the pool. A copy of the Police Report is attached hereto as **"Exhibit 10."**

38. On July 23, 2021, the Counsel for CWS Enterprises, LLC, sent a formal letter to the Board Members of the Association, placing them on notice of the discriminatory acts and harassment, including calling the police on the tenants occupying the residence. The Association also was placed on notice of its failure to take corrective action to remedy the structural deficiency and lack of stability of the railing that directly affects Unit #103, the unit belonging to the Plaintiff. A copy of the Formal Letter is attached hereto as **"Exhibit 11."**

39. In August 2021, it was brought to the Plaintiff's attention that one of his renters had been harassed by Defendant Kidd while they were at the pool. The renter stated that Defendant Kidd came up to him and told him that "they don't accept his kind" there. A copy of the message from the renter regarding harassment during their stay is attached hereto as **"Exhibit 12."**

40. Also in August 2021, it was brought to the Plaintiff's attention that another renter had been harassed when attempting to enjoy the pool amenities and was informed that the pool was for resident use only and that renters were not permitted to enjoy the pool. Additionally, a form was required to be filled out in order to use the pool. A copy of the message from the renter regarding harassment during their stay is attached hereto as **"Exhibit 13."**

41. The erection of the pool sign is illegal because it specifically discriminates against any person who is renting short-term in that community.

42. On September 20, 2021, Defendant Kidd called the police on Plaintiff Stowe, based on an altercation that happened at Defendant Kidd's home. Defendant Kidd told the officers that he invited Plaintiff Stowe over to take photos of legal documents regarding the HOA, which led to an argument between Plaintiff Stowe and Defendant Kidd. A copy of the Police Report is attached hereto as **"Exhibit 14."**

43. On October 28, 2021, all condominium owners were provided with an amendment to the Chalet Capri Declaration of Condominium which altered or deleted all provisions relating to short-term rentals as well as ownership of the unit by a corporate entity. The Condo documents were amended to prohibit future owners from engaging in rentals of less than 30 days. A copy of the Amended Declaration is attached hereto as **"Exhibit 15."**

44. Defendant Kidd also referred to Plaintiff as "Northern Predators" in one of the letters to the owners within the neighborhood.

45. On December 31, 2021, Defendant Kidd sent an end-of-year message to all of the residents of the Association, in which Defendant Kidd informed residents of the cancellation of future planned maintenance and repair due to the cost of litigation initiated by "one disgruntled new owner," referring to Curtis Stowe. A copy of the end-of-year letter is attached hereto as **"Exhibit 16."**

46. On March 18, 2022, Plaintiff received a letter addressed to all owners from Defendant Kidd, addressing the pool situation. In the letter, Defendant Kidd stated that the pool gate would have a chain and that all registered residents would be provided with a key to the lock. A copy of the letter stay is attached hereto as **"Exhibit 17."**

47. The current lock on the pool gate was not sufficient and another letter was sent to the community advising them to reach out to Defendant Kidd for a new key.

48. Plaintiff tried multiple times to reach out to Defendant Kidd to obtain a key to the pool, however, Defendant Kidd advised him that he was "cut off," from obtaining keys and to ask his neighbor for a key, which led to Plaintiff not having access to the pool for 3 months. A copy of the email correspondence is attached hereto as **"Exhibit 18."**

49. Eventually, Plaintiff was given a key that did not work on the lock to the pool. The Plaintiff reached out to a neighbor and asked if they would let him make a copy of their key, and the neighbor agreed. A copy of the email correspondence is attached hereto as **"Exhibit 19."**

50. On March 24, 2022, Plaintiff received another letter that stated that Plaintiff must remove the sign that he has outside of his home immediately and that "any rentals, leases, sales, and transfers must be approved by the elected Chalet Capri Board of Directors." A copy of the letter is attached hereto as **"Exhibit 20."**

51. On April 29, 2022, the Pinellas County Attorney's Office determined that reasonable cause exists to believe that a discriminatory housing practice has occurred. A copy of the Pinellas County Housing Determination is attached hereto as **"Exhibit 21."**

52. On October 5, 2022, Defendant Kidd was offered the opportunity to engage in a Conciliation Conference to provide a resolution of the charge of discrimination, in which Defendant Kidd declined to agree. A copy of the refusal to participate in a Conciliation Conference is attached hereto as **"Exhibit 22."**

53. On October 12, 2022, Plaintiff became aware that there was a Board Meeting in which he did not receive notice for, but all other residents received a notice. A copy of the notes is attached hereto as **"Exhibit 23."**

54. As of the filing of this Compliant, the Association has failed to review Plaintiffs notice or letters regarding other issues he has had with his unit.

55. On December 05, 2022, Defendant Acosta filed a police report alleging that the Plaintiff had cut his poinsettia's. After a brief investigation the Officer who responded to the call concluded that since the flowers were in a common area there was nothing that could be done. A copy of the Police Report is attached hereto as **"Exhibit 24."**

56. On April 2, 2023, a few board members called the Police on the Plaintiff's renters who were attempting to use the pool. A copy of the Police Report is attached hereto as **"Exhibit 25."**

57. On April 5, 2023 Plaintiff Stowe filed a police report due to the ongoing harassment he and his tenants were receiving from Defendant Kidd. A copy of the Police Report is attached hereto as **"Exhibit 26."**

58. Additionally, on October 12, 2023, Plaintiff Stowe went over to check in on the property. Shortly after arrival, Defendant Kidd showed up at the residence, pounding on the door until the Plaintiff answered. Furthermore, Defendant Kidd entered the home and began a verbal altercation with the Plaintiff. There is an ongoing investigation with the Treasure Island Police Department on this incident.

### IV. CAUSES OF ACTION

### COUNT ONE:

### Retaliation in Violation of the Fair Housing Act

## 42 U.S.C. §3617

1. Plaintiff's reallege and incorporate by reference paragraphs one through twenty-four (¶¶1-50) alleged in this complaint.

2. Pursuant to the Federal Fair Housing Act, it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, the dwelling. 42 U.S.C. §3617.

3. The Plaintiff engaged in the protected activity of seeking to enjoy his residence and occasionally rent the residence out in compliance with the Fair Housing Amendments Act (FHAA).

4. In order to establish a retaliation complaint, a Plaintiff must establish the following elements: (1) The Plaintiff engaged in a protected activity, (2) the Defendant subjected Plaintiff to an adverse action, and (3) there exists a causal link between the protected activity and the adverse action, and (4) the Defendant's action was motivated, in whole or part, by intentional discrimination. *Clark v. Pinellas County*, 2017 U.S. Dist. LEXIS 218558 (Fla. M.D. 2017).

5. The Plaintiff engaged in his right to utilize his property as a short-term rental and the Defendants harassed both the Plaintiff and his tenants.

6. After Plaintiff refused to stop utilizing his unit as a short-term rental, he received various letters from the Defendants about various "rules" that Plaintiff had been violating. Along with these letters, Defendant Kidd berated the Plaintiff on what owners can and cannot do in their own residence. In addition, the Defendants set meetings to limit privileges, services or facilities of a dwelling by making the Association amenities "residents only."

7. The hostility and numerous letters started after Plaintiff informed Defendant Kidd that he would be using his residence as a short-term rental property or as seasonal residence during the times he was not there.

8. Finally, Defendant Kidd engaged in part in these actions based on his discrimination against Plaintiff and his renters. This is further supported by Defendant Kidd's placement of signs at the pool stating the enjoyment of the amenities are for residents only. Additionally, Defendant Kidd has made comments to an African-American renter stating that they do not accept his kind there. *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005).

## COUNT TWO:

### Retaliation in Violation of the Florida Housing Act

### Fla. Stat. Ann. §760.37

1. Plaintiff realleges and incorporates by reference paragraphs one through twenty-four (¶¶1-50) alleged in this complaint.

2. The Defendant's acts constitute discrimination and violate Florida Fair Housing Law, Fla. Stat. Ann. §760.37.

## V. DEMAND FOR JURY TRIAL

1. Under Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable as of right.

## VI. REQUESTED RELIEF

WHEREFORE, the Plaintiff prays for entry of a judgment against the Defendant that:

1. Awards actual and compensatory damages under the Fair Housing Act, 42 U.S.C. §3613(c) and the Florida Fair Housing Act, Fla. Stat. Ann. §760.35;

2. Awards punitive damages under the Fair Housing Act, 42 U.S.C. §3601, *et seq.*, and the Florida Fair Housing Act, Fla. Stat. Ann. §760.35;

3. Declare that the has acted in retaliation against the Plaintiff's exercise and/or enjoyment of rights under the Fair Housing Act, 42 U.S.C. §3617 and the Florida Fair Housing Act, Fla. Stat. Ann. §760.37;

4. Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring the Defendant to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants as required by the federal and state fair housing laws;

5. Award costs of suit, including reasonable attorney's fees; and

6. Award all such other relief as the Court deems just and proper.

Respectfully Submitted,

_____
Charis A. Campbell, Esquire
Florida Bar No.: 10688
Golden Key Law Group, PLLC.
5030 78th Ave. N, Ste 13
Pinellas Park, FL 33781
Telephone: 727-317-4738
Facsimile: 727-362-1357
E-Mail: Campbell @GoldenKeyLawGroup.com
E-Service: Eserve@goldenkeylawgroup.com