**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CURTIS STOWE,

     Plaintiff,

v.                                                                    Case No: 8:23-cv-2822-KKM-TGW

CHALET CAPRI CONDOMINIUM
ASSOCIATION, INC., and
DAVID KIDD,

     Defendants.

_____

## <u>ORDER</u>

Curtis Stowe purchased a condominium unit in a community with a homeowners' association (HOA). After Stowe began renting out the unit on a short-term basis, he says that the HOA, Chalet Capri Condominium Association, Inc., and its president, David Kidd, repeatedly harassed Stowe and his tenants, some of whom were black. Stowe then sued the HOA and Kidd for retaliation under the federal Fair Housing Act (FHA), 42 U.S.C. § 3617, and the Florida Fair Housing Act (FFHA), § 760.37, Florida Statutes. Compl. (Doc. 1). Defendants move to dismiss for failure to state a claim. MTD (Doc. 19). Stowe opposes. Resp. (Doc. 21) Because Stowe's allegations fail to state a claim for retaliation under either the FHA or FFHA, I grant the motion.

## I.   BACKGROUND

In November 2020, Curtis Stowe purchased a condominium unit in the Chalet Capri community in Treasure Island, Florida, and transferred ownership of the property to a limited liability company, CWS Enterprises, LLC. Compl. ¶¶ 13–14. Stowe then completed an application with the HOA to use the property as a short-term rental. *Id.* ¶ 15. The HOA president, David Kidd, "expressed that this was unacceptable," and since then, Stowe alleges numerous "incident[s]" with Kidd. *Id.* ¶¶ 16–19. For example, Kidd called the police to report that Stowe illegally parked his vehicle in front of his garage, made a "false police report" and other "false allegations" that Stowe's visiting relatives were illegal renters, and on occasion "harassed" and yelled at Stowe's visitors. *Id.* ¶¶ 17–19, 21. In other instances, Kidd asked Stowe to store his grill and propane tanks inside, deactivate an outdoor motion light, and remove a beach house sign above the door. *Id.* ¶¶ 22–23, 26.

Kidd and the HOA also took steps to prevent Stowe from using his condo as a short-term rental. In March 2021, after the HOA "fell one vote short to change the condo docs to specify a minimum of one year lease per unit at a special member meeting," Kidd circulated a letter to the community stating that "[w]e must find another way to deal with predatory out of state investors and others that choose to redefine our multi-unit residential status to commercial status." *Id.* ¶¶ 24–25, 30; *see also* (Docs. 1-2, 1-3, 1-5). A month

later, Kidd circulated a second letter explaining that if no action were taken to combat short-term rentals, primary residents would be "left holding the bag" and would be "faced with [a] totally unimaginable, extremely dangerous, and outrageously expensive ordeal." *Id.* ¶ 32 (quoting Doc. 1-7) at 1. Finally, Kidd sent all community property owners a letter requiring "proof of liability insurance for any rental" that the HOA had not yet approved. (Doc. 1-9).

Stowe continued to rent out his unit on a short-term basis but alleges that Kidd harassed his short-term tenants over the next few months. Specifically, Stowe claims that Kidd called the police on his tenants in July 2021 for using the pool. *Id.* ¶ 37; *see* (Doc. 1-10). The same day, Stowe's counsel sent a letter to the HOA threatening litigation. *See* (Doc. 1-11). One month later, Kidd told one of Stowe's black tenants using the pool that "they don't accept his kind" there and told another tenant that the pool was for resident use only. *Id.* ¶ 39; (Doc. 1-12) at 1. The HOA later placed a lock on the pool gate and advised that "[a]ll registered residents have a key to the lock." *Id.* ¶¶ 46–47; (Doc. 1-17). Stowe claims that Kidd failed to provide him with a key for three months, although he later obtained a copy from a neighbor. *Id.* ¶¶ 47–49.

In October 2021, the HOA voted to amend the condominium bylaws. *Id.* ¶ 43; *See* Decl. of Condominium (Doc. 1-15). Specifically, the amendments removed all provisions related to ownership of units by corporate entities and

prohibited the rental of units for periods of less than one month. *See* Decl. of Condominium ¶¶ 3.20, 16, 16.1, 16.10, 16.12, and 27.03. The next month, Stowe filed a fair housing complaint with the Pinellas County Office of Human Rights. Compl. ¶¶ 6, 51; *see* Pinellas County Code § 70-137(a). Stowe alleges that in April 2022, "the Pinellas County Attorney's Office determined that reasonable cause exists to believe that a discriminatory housing practice has occurred" but that Kidd declined to participate in the permitted conciliation conference. Compl. ¶¶ 51–52; (Docs. 1-21, 1-22). In response, Kidd circulated an annual summary letter advising that "[d]ue to the cost of litigation initiated by one disgruntled new owner we have had to cancel certain planned maintenance and repair projects in order to meet our tight 2021 budget and defend our peaceful, residential, neighborhood way of life." (Doc. 1-16) at 1; Compl. ¶ 45.

Stowe alleges continuing difficulties with Kidd since then, including that "Kidd entered [his] home and began a verbal altercation," which led Stowe to contact the police. Compl. ¶¶ 57–58. Stowe ultimately filed this action against Kidd and the HOA, alleging that defendants retaliated against him for "engag[ing] in the protected activity of seeking to enjoy his residence and occasionally rent the residence out in compliance with the Fair Housing Amendments Act." *Id.* at 11–12 (Count One). For the same reasons, Stowe says that defendants' actions "constitute discrimination and violate [the] Florida

Fair Housing [Act]." *Id.* at 13 (Count Two). Defendants move to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

"To survive a motion to dismiss" for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570(2007)). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, courts accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly,* 550 U.S. 544.

## III.    ANALYSIS

Defendants principally argue that their "efforts to maintain and restore order in the community . . . fall well short of actions that could be deemed to coerce, intimidate, threaten, or interfere with [Stowe] or caus[e] [him] to abandon his housing rights." MTD at 2. I agree. Stowe's complaint describes a

5

dispute between neighbors over short-term rentals, not discriminatory retaliation under the FHA or FFHA.

### A. Stowe has standing to sue under the FHA and FFHA

Defendants do not allege that Stowe lacks standing. But because a plaintiff's standing to sue is jurisdictional, it is "a threshold question that must be explored at the outset of any case" regardless of whether any defendant raises it. *Corbett v. TSA*, 930 F.3d 1225, 1232 (11th Cir. 2019). And here it presents a close question. Stowe, the only named plaintiff, alleges that defendants retaliated against him for exercising "his right to utilize his property as a short-term rental," and requests damages and declaratory and injunctive relief. Compl. (Count One) ¶ 5. But Stowe does not own the property. A nonparty, CWS Enterprises, LLC, does. *Id.* ¶ 14; (Doc. 1-15) at 26.

To establish standing, the burden is on a plaintiff to show that that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In other words, "the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc). In applying those three elements, federal courts " 'have routinely found that a member of an LLC does not have [Article III] standing to sue on behalf of the

LLC for an injury caused to the LLC' where they cannot show any independent injury of their own." *Siewe v. Fay Servicing, LLC*, No. 1:21-CV-0079-CC-JSA, 2021 WL 2651819, at \*6 (N.D. Ga. Feb. 18, 2021) (citation omitted), *report and recommendation adopted*, No. 1:21-CV-0079-CC-JSA, 2021 WL 2655193 (N.D. Ga. Mar. 9, 2021). For example, where "property was owned and all transactions were conducted in a company name," the "[i]njuries related to the property, the loan, and its attendant security interests . . . are not injuries to [the members] sufficient to confer on them standing." *Id.* Stowe is thus ill-positioned to assert CWS Enterprises' economic injuries even assuming he is the LLC's sole member.

On the other hand, the FHA and FFHA confer standing broadly and permit claims that do not require plaintiff to own the property in question.[1] The "sole requirement for standing to sue under [the FHA] is the [Article III] minima"—that is, an injury traceable to the actions of the defendant and a likelihood of redress if the requested relief is granted. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). Under 42 U.S.C. § 3613(a)(1)(A), "[a]n aggrieved person may commence a civil action . . . after the occurrence or the termination of an alleged discriminatory housing practice." An "aggrieved

---

[1] "Standing under the [Florida FHA] . . . should be treated similarly because [the Florida FHA is] identical in substance to [FHA]." *Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1408–09 (11th Cir. 1989).

person" "includes any person who . . . claims to have been injured by a discriminatory housing practice." *Id.* § 3602(i). And here, Stowe sues under a provision of the FHA that makes it unlawful for anyone to interfere with another's "exercise or enjoyment of, or on account of his having exercised or enjoyed, *or on account of his having aided or encouraged any other person in the exercise or enjoyment of*, any right granted or protected by" the statute. *Id.* § 3617 (emphasis added). So, "[t]he plain language of § 3617 . . . creates a cause of action for persons who are themselves exercising a right under the Act or somehow aiding another in exercising their rights under the FHA." *Telesca v. Vill. of Kings Creek Condo. Ass'n, Inc.*, 390 F. App'x 877, 882 (11th Cir. 2010) (per curiam).

Accordingly, to the extent Stowe alleges that he resided in CWS Enterprises' unit and (by inference) possessed authority to rent the unit to tenants of a protected class, the FHA and FFHA theoretically recognize Stowe's right to do so on another's behalf. *See id.*; *see also Fernandez v. Orlando Hous. Auth.*, No. 6:15-CV-1341-ORL-40DAB, 2016 WL 2784989, at *4 (M.D. Fla. May 13, 2016) (finding plaintiff satisfied standing requirements by alleging she was "denied the right to aid her father in the exercise and enjoyment of his housing rights and . . . suffered mental anguish"). Because Stowe also stands to profit from his efforts to assist CWS Enterprises and its tenants, defendants'

8

purported interference with those efforts constitutes a cognizable injury sufficient to satisfy the constitutional requirements of standing.

### B. Stowe fails to allege that defendants coerced, intimidated, threatened, or interfered with his protected rights

Even though Stowe has standing to sue, he nonetheless fails to state a claim for retaliation under the FHA because he does not allege that Kidd or the HOA discriminated against him or his tenants based on a protected classification or exhibited a pattern of severe discriminatory conduct that caused him to abandon housing rights protected by the FHA.

The FHA's anti-retaliation provision makes it unlawful for anyone to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [42 U.S.C. §§ 3603, 3604, 3605, or 3606]." 42 U.S.C. § 3617. Although the Eleventh Circuit "ha[s] not articulated the elements of a *prima facie* FHA-retaliation case in published caselaw," its unpublished cases extract from Title VII precedent that a plaintiff "must demonstrate that (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) there is a causal link between the adverse action and the protected conduct." *Philippeaux v. Miami Apartments Invs., LLC*, No. 24-

9

11468, 2025 WL 275402, at *6 (11th Cir. Jan. 23, 2025) (per curiam) (citing

*Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

As for protected conduct, "[t]he Eleventh Circuit, unlike most courts, has

concluded that Section 3617 does not require *proof* of violation of Sections

3603–3606 in order to create liability." *Gourlay v. Forest Lake Ests. Civic Ass'n*

*of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1235 (M.D. Fla. 2003), *vacated by*

*settlement*, No. 8:02CV1955T30TGW, 2003 WL 22149660 (M.D. Fla. Sept. 16,

2003) (emphasis added) (citing *Sofarelli v. Pinellas County*, 931 F.2d 718, 722

(11th Cir. 1991)). But a plaintiff must still "plausibly allege an underlying

violation of one of the four statutes," and the rights those statutes protect, to

trigger liability for retaliation. *Watts v. Joggers Run Prop. Owners Ass'n, Inc.*,

133 F.4th 1032, 1044 (11th Cir. 2025). Here, the only potentially relevant

provisions appear to be Sections 3604(a), (b), and (f),[2] which broadly prohibit

"mak[ing] unavailable or deny[ing]" housing or "discriminat[ing] against any

person in the terms, conditions, or privileges of sale or rental," or "in the

---

[2] 42 U.S.C. § 3603 defines the dwellings eligible for Section 3604's protections. Section 3605(a) makes it unlawful for anyone "whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of" a protected classification. And Section 3606 applies to "membership or participation in any multiple-listing service, real estate brokers' organization or other [similar] service." None of Stowe's allegations clearly relate to these other protected rights.

provision of services or facilities" therein "because of race, color, religion, sex, familial status, or national origin."

Stowe fails to plausibly allege that defendants violated any of these rights "granted or protected by" the FHA. At most, Stowe says that he "engaged in the protected activity of seeking to enjoy his residence and occasionally rent the residence." Compl. (Count One) ¶ 3; *see id.* ¶ 5 (Stowe "engaged in his right to utilize his property as a short-term rental and the Defendants harassed both the Plaintiff and his tenants."). But the FHA does not independently protect an owner's right to use a property as a short-term rental and thus that right cannot form the basis of Stowe's Section 3617 claim. *See Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 858 (11th Cir. 2010). Rather, the underlying FHA rights protect individuals from being "discriminate[d] against . . . in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Stowe does not allege that Kidd or the HOA prevented him (or others he assisted) from accessing housing or otherwise discriminated against Stowe based on any protected classification.

To the extent that Stowe claims Kidd "made comments to an African-American renter" or called the police on a black renter using the pool, Compl. ¶ 4; (Count One) ¶ 8, he appears to assert the rights of unnamed, unspecified

11

third parties who rented a property from his LLC. Even then, those third parties must have faced "unequal treatment" based on their race or other protected characteristic "that affects the availability of housing," either by intentional discrimination or discriminatory impact. *Jackson v. Okaloosa County*, 21 F.3d 1531, 1542 (11th Cir. 1994); *see Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008) ("[A] disparate treatment claim [under the FHA] requires a plaintiff to show that he has actually been treated differently than similarly situated [non-black] people.").

Stowe fails to allege such unequal treatment. Although the racial makeup of his tenants remains unclear, Stowe's complaint establishes that Kidd and other community members scrutinized *all* short-term renters, not just those of a certain race. For example, Kidd called the police on a white tenant for using the pool, *see* Compl. ¶ 37; (Doc. 1-10), "harassed" another tenant of unspecified race and told them "the pool was for resident use only," *see* Compl. ¶ 40, placed "signs at the pool stating the enjoyment of the amenities are for residents only," *id.* (Count One) ¶ 8, and eventually locked the pool gate, *id.* ¶ 46; (Doc. 1-17). Other HOA board members likewise called the police on white short-term renters. *See* (Doc. 1-25). Accordingly, Stowe does not allege that Kidd or the HOA prohibited him from renting to individuals of a certain race or discriminated against specific individuals in the use of community facilities based on race.

Next, even had Stowe plausibly alleged a violation of his protected rights, defendants argue that they did not "coerce, intimidate, threaten, or interfere" with his exercise of those rights. MTD at 2–7; *see also* 42 U.S.C. § 3617. Again, I agree. "The plain meaning of the first three words, coerce, intimidate, and threaten, requires either violent conduct or threatening conduct," while interference requires "discriminatory conduct that is so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights." *Gourlay*, 276 F. Supp. 2d at 1235. For example, "leaving a note threatening 'to break [plaintiff] in half' if he did not get out of the neighborhood and running up to one of [plaintiff's] trucks, hitting it, shouting obscenities and spitting at [plaintiff]" along with making racial slurs in a newspaper satisfy Section 3617's standard. *Sofarelli*, 931 F.2d at 722.

On the other hand, defendants are not bound by a federal "code of civility." MTD at 7. So, for example, a plaintiff's allegation that he "was retaliated against when his van, which was leaking oil, was towed, a board member complained that he was violating the pool rules by using a mask and snorkel in the pool, and the same board member assessed fines against [him] for the oil leak and took photographs of him" is insufficient to state a claim for interference. *Wood v. Briarwinds Condo. Ass'n Bd. of Directors*, 369 F. App'x 1, 3 (11th Cir. 2010). At bottom, to the extent Section 3617 continues to "regulate[] discriminatory conduct . . . during[ and] after a sale or rental of a

dwelling," *Gourlay*, 276 F. Supp. 2d at 1235, "[n]either the FHA's text nor its legislative history indicates an intent to make 'quarrels between neighbors . . . a routine basis for federal litigation.' " *Bloch v. Frischholz*, 587 F.3d 771, 780 (7th Cir. 2009) (quoting *Halprin v. Prairie Single Fam. Homes of Dearborn Park Ass'n*, 388 F.3d 327, 329 (7th Cir. 2004)).

Stowe's allegations do not suffice to show coercion or interference, nor does he seriously argue otherwise in response to defendants' motion. *See* Resp. at 5–8 (quoting portions of the complaint). At best, Stowe's complaint establishes that he had a longstanding, contentious disagreement with his HOA and Kidd centered on Stowe's use of his condo unit as a short-term vacation rental. Accepting Stowe's allegations as true, Kidd retaliated in a colloquial sense by scrutinizing Stowe's guests and renters, publicizing to the community concerns and costs associated with short-term rentals, and successfully pushing for bylaw amendments to prohibit such rentals altogether. *See* Compl. ¶¶ 24–25, 30. In some instances, Kidd enforced HOA rules against Stowe in a manner that Stowe perceived as unfairly strict. *See, e.g., id.* ¶¶ 22–23, 26, but in others Stowe allegedly caused disruptions and violated community rules, *id.* ¶ 6, 55. When tensions between Stowe and Kidd escalated, each called the police on the other. *Id.* ¶¶ 42, 58. Ultimately, the parties' dispute amounts to a heated disagreement about whether, and to what extent, the HOA should permit out-of-state property owners to use their units

14

as short-term rentals. That kind of contractual and property dispute—and the unpleasantries attendant to it—are outside the scope of an FHA retaliation claim, and Stowe's claim therefore fails.

### C. For the same reasons, Stowe fails to state a claim for a violation of the Florida Fair Housing Act

Stowe's claim under the FFHA rises and falls with his claim under the FHA, as made clear in part by the identical set of facts incorporated into each count. Moreover, "[t]he FHA and the Florida Fair Housing Act are substantively identical, and therefore the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285 (11th Cir. 2014) (citation omitted). For the reasons explained, Stowe fails to allege that defendants "coerce[d], intimidate[d], threaten[ed], or interfere[d] with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under [the FFHA]." § 760.37, Fla. Stat. His parallel state law claim must be dismissed.

## IV.  CONCLUSION

Stowe's complaint fails to allege sufficient facts showing that defendants interfered with any of his protected rights or the protected rights of others under the FHA or FFHA. Accordingly, the following is **ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 19) is **GRANTED**.

15

2. Plaintiff's Complaint is **DISMISSED without prejudice.** Plaintiff may file an amended complaint no later than November 20, 2025. Within ten days of the filing of any amended complaint, the parties shall file an amended Case Management Report.

ORDERED in Tampa, Florida, on October 30, 2025.

Kathryn Kimball Mizelle
United States District Judge

16